THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 7:08-CV-218-FL

JULIUS J. DIXON,                        )
                                        )
    Plaintiff/Claimant,                 )
                                        )
            v.                          )        **MEMORANDUM AND**
                                        )        **RECOMMENDATION**
MICHAEL J. ASTRUE, Commissioner         )
of Social Security,                     )
                                        )
    Defendant.                          )

        This matter is before the Court on the parties' cross motions for judgment on the

pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Julius Dixon ("Claimant") filed this action

pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his

applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI") payments. The time for filing responsive briefs has expired and the

pending motions are ripe for adjudication Accordingly, the pending motions are ripe for

adjudication.   Having carefully reviewed the administrative record and the motions and

memoranda submitted by the parties, this Court recommends denying Claimant's Motion for

Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and

upholding the final decision of the Commissioner.

                            **STATEMENT OF THE CASE**

        Claimant filed an application for DIB and SSI payments on 16 March 2004, alleging

disability beginning 30 September 2000. (R. 126-28, 415-19). Both claims were denied initially

and upon reconsideration. (R. 72-73, 89-92, 95, 421-28). A hearing before the Administrative

Law Judge ("ALJ") was held on 31 October 2005, at which Claimant was represented by counsel

and a vocational expert ("VE") appeared and testified. (R. 56-71). On 1 August 2006, the ALJ issued a decision denying Claimant's request for benefits. (R. 74-81, 430-37). On 29 June 2007, the Appeals Council remanded the claim to the ALJ for further administrative proceedings. (R. 86-88). A second administrative hearing before the same ALJ was held on 13 February 2008, at which Claimant was represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 35-55). On 9 May 2008, the ALJ issued a decision denying Claimant's request for benefits. (R. 14-31). On 24 October 2008, the Appeals Council denied Claimant's request for review. (R. 7). Claimant then commenced the instant action, seeking judicial review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the

2

Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3); 416.920a(c)(3). The ALJ is required to incorporate into his written

3

decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(2); 416.920a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to properly evaluate Claimant's medical impairments; (2) improper assessment of Claimant's credibility; and (3) improper assessment of Claimant's residual functional capacity ("RFC"). Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl.'s Mem.") at 1.

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 20). Next, the ALJ determined Claimant had the following severe impairments: obesity, sleep apnea, asthma and depression. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20). In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found Claimant had mild difficulties in activities of daily living and in social functioning, moderate difficulties with regard to concentration, persistence or pace and experienced no episodes of decompensation. (R. 22).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] that required only occasional balancing, no climbing ladders,

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this

4

scaffolds or ropes and no exposure to extreme temperatures, humidity, fumes, odors, gases or hazards. (R. 24). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 25). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a cook or laborer. (R. 29). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy, such as a ticket seller, router and cashier. (R. 30).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 32 years old and unemployed. (R. 40, 126). Claimant testified that he never finished school[2] and he failed the GED exam by three points. (R. 42). Claimant testified that he had been incarcerated for a period of five months during the year prior to the administrative hearing stemming from a simple assault conviction. (R. 48-49).

Claimant has received vocational assistance for approximately four or five years. (R. 40). Providing no dates, Claimant explained that with the assistance of Vocational Rehabilitation Services ("VRS"), he began working in the shipping department of a chicken

---

category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

[2] During Claimant's administrative hearing held on 31 October 2005, Claimant testified to completing the eighth grade. (R. 61).

5

processing plant, where his duties included entering and exiting a freezer throughout the day. (R. 41). However, Claimant testified that he stopped working after his first week of employment with the chicken processing plant due to problems with his asthma. (R. 41). Subsequently, Claimant attend a VRS workshop. (R. 42). Claimant testified that one week prior to the administrative hearing, he met with his vocational rehabilitation counselor, who expressed her concern as to Claimant's employability due to his inability to remain awake during a recent vocational workshop. (R. 40). When questioned about his 2006 earnings, Claimant testified that he worked at a "workshop job" putting labels on. (R. 44).

Claimant explained numerous medical conditions support his disability claim and his inability to work full-time. These medical conditions include asthma, obesity, diabetes, chronic low back pain, high blood pressure and swelling in his lower extremities. Claimant uses a pump for his asthma and testified to visiting the hospital on occasion because of his asthma. (R. 45). Claimant testified to using a CPAP machine at night. (R. 43). At the time of the hearing, Claimant weighed 343 pounds and testified to weighing as much as 395 pounds in the last three years. (R. 43). Claimant testified he has experienced chronic low back pain for the past two years for which he takes pain medication. (R. 45). Claimant takes medication also for diabetes and high blood pressure. (R. 44, 46). Claimant experiences swelling in his ankles after standing for more than an hour and a half, after which he must sit for the remainder of the day. (R. 46). Claimant testified that it can take up to a week before the swelling subsides. (R. 46). Claimant testified further that if he is sitting and is not engaged in conversation or an activity, he falls asleep. (R. 47). Claimant testified to visiting a mental health facility at the request of VRS, but was unable to recall his last visit. (R. 48).

6

Claimant stated he is capable of carrying "a box of pillows or something like that" or "[m]aybe something like a couple of packs of meat and the bread." (R. 47). When his feet are swollen, Claimant rests in a recliner with two or three pillows placed under his legs. (R. 48). Claimant testified to using the restroom six or seven times a day due to his use of fluid pills. (R. 48).

## III. Vocational Expert's Testimony at the Administrative Hearing

Fifi Jubran testified as a VE at the administrative hearing. (R. 51-54). After the VE's testimony regarding Claimant's past work experience (R. 52), the ALJ posed the following hypothetical:

> [A]ssume somebody with [Claimant's] age, education and work experience. I want to go to light. I want this individual do (sic) avoid ladders, scaffolds and ropes, no more than occasional balancing. I want this individual to avoid extremes of temperature, excessive humidity. I want this individual to avoid fumes, odors, gases, things of that nature, basically airborne irritants. I want this individual to avoid a hazardous environment such as unprotected heights, moving machinery, things of that nature and I also want the work to be unskilled.

(R. 52-53). The VE responded the individual could perform the following positions with a specific vocational preparation ("SVP") time of 2 and provided DOT classification citations along with the number of jobs available in the local and national economies: (1) ticket seller - DOT 211467030, 1,000 locally, 180,000 nationally; (2) router - DOT 222687022, 3,000 locally, 238,000 nationally; and (3) cashier - DOT 222387030, 57,500 locally, 3,110,000 nationally. (R. 53). The VE stated that his testimony was consistent with the DOT. (R. 53). The VE testified further that if the ALJ found Claimant's testimony credible, there would be no work that Claimant could perform. (R. 53).

7

I.  **The ALJ's finding that Claimant's impairment did not meet or equal Listing 12.05 is supported by substantial evidence.**

Claimant argues that the ALJ erred by finding that his impairment does not meet or equal Listing 12.05, the listing for mental retardation. Pl.'s Mem. at 8.

Claimant bears the burden of demonstrating that his impairments meet or equal a listed impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). Listing 12.05 sets forth a two-part inquiry for determining whether a Claimant meets the requirements for mental retardation. *Norris v. Astrue*, No. 7:07-CV-184-FL, 2008 U.S. Dist. LEXIS 92635, at *5, 2008 WL 4911794, at *3 (E.D.N.C. Nov. 14, 2008); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. First, a claimant must satisfy the diagnostic description of mental retardation, which requires a showing of "(1) significantly subaverage general

---

[3] While Claimant summarizes his first assignment of error as an improper assessment of his mental limitations and obesity, upon examination, it appears Claimant's discussion raises two separate allegations: (1) the ALJ erred by finding Claimant's impairments do not meet or equal Listing 12.05, the listing for mental retardation; and (2) the ALJ improperly evaluated the limitations associated with Claimant's depression, obesity and sleep apnea. Pl.'s Mem. at 8-9. The Court considers the second issue raised in Claimant's first assignment of error in its credibility and RFC discussions below.

The Court considers briefly a third contention contained within Claimant's first assignment of error. In particular, Claimant states he "could be found medically dysfunctional to the extreme levels contemplated in mental health listing[] 12.04." Pl.'s Mem. at 9. Claimant however has not briefed this issue or presented it to the Court with any supporting discussion or authority. Claimant is deemed therefore to have abandoned argument on this issue. *See e.g., Newton v. Astrue*, 559 F. Supp. 2d 662, 670-71 (E.D.N.C. 2008) (citations omitted); *March v. Comm'r of SSA*, 559 F. Supp. 2d 722, 730 n.5 (N.D. Tex. 2008)

8

intellectual functioning[4] (2) with deficits in adaptive functioning[5] (3) initially manifested during the developmental period; i.e.... before age 22." *Id.* (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05). Upon making this showing, the claimant must then meet the required severity level of this disorder, which is accomplished by satisfying any one of four categories labeled (A)-(D) under § 12.05. *Id.* Claimant implies that he satisfies the mental retardation listing under category C ("Listing 12.05C"), which requires (1) a valid verbal, performance or full scale IQ of 60 through 70; and (2) another impairment, physical or mental, that imposes an additional and significant work-related limitation of function.[6] *Id.* at § 12.05C.

Claimant provides no analysis, arguing only that (1) "while the ALJ goes to great length to show that there is no valid IQ . . . , the ALJ simply chose to ignore the implication of the decline that showed up in [Claimant's] school records;" and (2) his school records suggest, "at

---

[4] The phrase "significantly subaverage general intellectual functioning" appears also in the definition of mental retardation found in the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), which the DSM-IV defines as "an IQ of about 70 or below." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 39 (4th ed. 1994).

[5] Listing 12.05 does not define "adaptive functioning." Regulations promulgated by the SSA provide that "[t]he definition of [mental retardation] . . . in [the] listings is consistent with, if not identical to, the definitions of [mental retardation] used by the leading professional organizations." Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20018-01, at 20022 (April 24, 2002). Given "the SSA declined to adopt any one of [these] specific definitions, . . . the introductory paragraph of Listing 12.05 can be met if the individual is found to have, *inter alia,* deficits in adaptive functioning as defined by any of the four professional organizations." *Durden v. Astrue,* 586 F. Supp. 2d 828, 834 (S.D. Tex. 2008).

[6] The "work-related limitation of function" requirement is satisfied when the claimant is determined to have a severe impairment at step two of the evaluation process. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)); *see also Flowers v. U.S. Dep't Health & Human Servs.,* 904 F.2d 211, 214 (4th Cir. 1990) ("In this circuit, we follow the rule that if a claimant cannot return to his past relevant work, he has established a work-related limitation of function which meets the requirements of § [12.05C]"); *accord Luckey v. Dept. of Health & Human Servs.,* 890 F.2d 666, 669 (4th Cir. 1989) (holding that claimant satisfies the second prong of 12.05C if claimant has an additional severe impairment or cannot perform his past relevant work).

the very least," "a cognitive dysfunction that would need to be taken into account in determining whether . . . [Claimant] met the requirements for [L]isting 12.05C . . . ." Pl.'s Mem. at 7 ¶ 2, 8 ¶ 2.

At the outset, the Court notes that in his discussion of the criteria for Listing 12.05C, the ALJ misapplied the analysis of whether Claimant had an impairment that imposes an additional and significant work-related limitation of function. Conceding that Claimant had "other impairments that were considered severe (i.e., obesity, sleep apnea, and asthma)," the ALJ found that the impairments "were . . . not to the severity that are considered disabling." (R. 23). Providing no further discussion, the ALJ apparently found that a step-two severity finding in and of itself was insufficient to satisfy the second requirement of Listing 12.05C. However, the "work-related limitation of function" requirement *is satisfied* when the claimant is determined to have a severe impairment at step two of the evaluation process. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Furthermore, "if a claimant cannot return to his past relevant work, [as the ALJ found here], he has established a work-related limitation of function which meets the requirements of § [12.05C]." *Flowers*, 904 F.2d at 214; *accord Luckey*, 890 F.2d at 669 (holding that claimant satisfies the second prong of 12.05C if claimant has an additional severe impairment or cannot perform his past relevant work).

Upon review of the record, however, the Court finds the ALJ's error harmless as Claimant is unable to meet his burden in establishing a valid verbal, performance or full scale IQ of 60 through 70. Claimant scored a verbal intelligence quotient ("IQ") of 60, performance IQ of 49 and a full scale IQ of 50 on the Wechsler Adult Intelligence Scale ("WAIS-III") test,

10

administered on 23 April 2004 by state agency examining consultant Jerry Miller, M.A. (R. 23, 199).[7] However, the ALJ found these test results invalid due to Mr. Miller's notation that the scores should be "viewed with caution" as Claimant's "vocabulary . . . appear[ed] . . . superior to his response style on the WAIS-III." (R. 23, 199).

Claimant does not contest the ALJ's finding that the April 2004 test scores were invalid. Rather, Claimant relies on his enrollment in special education classes, his poor performance in school,[8] his inability to complete the ninth grade and his lackluster performance on achievement testing, and contends this information "[a]t the very least [] suggest[s] a cognitive dysfunction that would need to be taken into account in determining whether . . . [Claimant] met the requirements for [L]isting 12.05C . . . ." Pl.'s Mem. at 8. Such evidence can suggest that Claimant demonstrated deficits in adaptive functioning. *See Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006) (struggling in special education classes, having trouble with reading, writing

---

[7] School records indicate Short Form Test of Academic Aptitude ("SFTAA") scores of 90 in language ("L"), 100 in non-language ("NL") and 94 total ("T") and 88L, 81NL and 85T in third and fourth grades, respectively. However, the Court cannot determine from the record if these IQ scores yield results comparable to the Wechsler series. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c) (explaining "[t]he IQ scores in 12.05 reflect values from tests of general intelligence that have a mean of 100 and a standard deviation of 15; e.g., the Wechsler series. IQs obtained from standardized tests that deviate from a mean of 100 and a standard deviation of 15 require conversion to a percentile rank so that we can determine the actual degree of limitation reflected by the IQ scores.) Moreover, to the extent the SFTAA results are comparable to the Wechsler series, mental impairment listings applicable to *children* specify that I.Q. test scores must be "sufficiently current" for accurate assessment under the listing and that I.Q. scores obtained between the ages of seven and sixteen are considered current for only two years if they are higher than 40. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.00(D)(10).

[8] In discussing Claimant's school records, the ALJ opined that "it appeared the [C]laimant did 'well' in the subjects he liked, otherwise he did not." (R. 23 ¶ 3). Claimant argues that this summary of Claimant's school records is "unfounded." Pl.'s Mem. at 7. Upon review of the school records, the Court agrees that there is no basis for this finding. (R. 161-67). However, the ALJ's failure to support this statement with record evidence does not affect the Court's analysis of this issue.

and math, and dropping out of school in the ninth grade constituted evidence of mental retardation prior to age 22); *Hatfield v. Astrue*, No. 5:07-00267, 2008 WL 4449948, at *12 (S.D. W. Va. Sept. 29, 2008) (explaining claimant failed to demonstrate deficits in adaptive functioning as he was not enrolled in special education classes in school, had a lengthy employment history and managed his own finances); *Edwards v. Comm'r of Soc. Sec.*, No. 1:07-CV-848, 2008 WL 4425587, at *8 (W.D. Mich. Sept. 9, 2008) (identifying claimant's participation in special education classes and inconsistent work history as evidence of deficits in adaptive functioning). However, satisfaction of the *diagnostic description* of mental retardation alone is not sufficient to meet or equal Listing 12.05C. *See Norris*, 2008 U.S. Dist. LEXIS 92635, at *6, 2008 WL 4911794, at *3 (explaining if a claimant satisfies the diagnostic description, the inquiry then moves on to whether subpart C is satisfied). Given the lack of valid IQ scores falling within the Listing 12.05C range, Claimant has not met the required *level of severity* for Listing 12.05C. Accordingly, Claimant's argument as to this issue is without merit.

## II.    The ALJ properly assessed Claimant's credibility and did not require the presence of objective medical evidence of pain.

Claimant argues that the ALJ improperly evaluated his credibility, and in particular, his testimony concerning the disabling effects of his pain. Pl.'s Mem. at 12-16.

Upon establishing the existence of a medically-determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptom(s), the ALJ must evaluate the intensity, persistence and limiting effects of said symptom(s) on a claimant's ability to perform basic work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); Soc. Sec. Rul. ("S.S.R.") 96-7p, 1996 WL 374186, at *1; *see Craig*, 76 F.3d at 595. This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and

12

their functional effects can be believed and accepted as true; thus, the ALJ must consider conflicts between the claimant's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); S.S.R. 96-7p, 1996 WL 374186, at *4. A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). In assessing credibility, the ALJ must consider the entire case record, provide specific reasons for the credibility finding and ensure the weight accorded (and reasoning for said weight) to the claimant's statements is evident to the claimant and any subsequent reviewers. S.S.R. 96-7p, 1996 WL 374186, at *4; *see Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985); *see also Newton*, 559 F. Supp. 2d at 673. In addition to the objective medical evidence, the ALJ's evaluation of a claimant's credibility must include the following factors:

(1)    effect of symptoms on claimant's daily activities
(2)    location, duration, frequency and intensity of the symptom(s)
(3)    factors that precipitate or aggravate claimant's symptoms
(4)    type, dosage, effectiveness and side effects of medication taken to alleviate the symptom(s)
(5)    non-medical treatment received for relief of the symptom(s)
(6)    any non-treatment measures used to relieve the symptom(s)
(7)    other factors concerning functional limitations and restrictions due to the symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); S.S.R. 96-7p, 1996 WL 374186, at *3; *see Hyatt v. Heckler*, 711 F. Supp. 837, 848 (W.D.N.C. 1989), *aff'd in part, amended in part, vacated in part*, 899 F.2d 329 (4th Cir. 1990).

After reviewing the ALJ's decision, this Court finds the ALJ made the necessary findings in support of his credibility determination and analysis of Claimant's complaints of pain pursuant

13

to the framework explained above.[9] *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Regarding objective evidence, the ALJ properly summarized Claimant's medical records as to each impairment. While Claimant contends the ALJ's discussion of the evidence regarding Claimant's depression, obesity and sleep apnea is "circularly performed" and "omits" relevant evidence, Claimant cites no support for these allegations. Pl.'s Mem. at 9. Moreover, upon review of the record, the Court finds the ALJ's summaries of these impairments adequate and accurate.

With respect to Claimant's depression, the ALJ summarized findings by state agency examiners and outpatient records from the North Carolina Department of Correction. (R. 27). These findings included the following: (1) Claimant's display of "fairly normal" psychomotor activity, good eye contact and goal-directed and organized thought processes (R. 207); (2) Claimant's May 2004 IQ scores and the examiner's caveat that the scores be viewed with caution since Claimant's vocabulary usage during the examination appeared superior than that reflected in the test scores (R. 199); (3) a Global Assessment of Functioning ("GAF")[10] score of 80 (R.

---

[9] Claimant contends "the ALJ did not evaluate [Claimant's] pain through the two-step process required by [S.S.R.] 97-6p." Pl.'s Mem. at 14. To the contrary, the ALJ explained

> [a]fter considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

(R. 25). Accordingly, the Court finds this argument meritless.

[10] The GAF scale ranges from zero to one-hundred and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 1994).

14

251), which indicates that "[i]f some symptoms are present, they are transient and expectable reactions to psychosocial stressors . . .; no more than slight impairment in social, occupational, or school functioning." DSM-IV at 32; (4) an intellectual level functioning within the borderline to extremely low range of intellectual functioning (R. 251); and (5) evidence over a five-year period indicating stable mental health and no evidence of a mental illness (R. 299-374). (R. 27).

Regarding Claimant's obesity, the ALJ acknowledged that the "medical evidence confirms that the claimant suffered with morbid obesity" and noted the following: (1) edema in Claimant's bilateral lower extremities with this ankles; (2) Claimant's ability to move well generally and sustain consistent function; (3) Claimant's good muscle tone, normal gait, ability to heal and toe walk, squat and rise and tandem walk without difficulty; (4) Claimant's recent weight loss of fifty-five pounds; (5) the lack of evidence indicating that Claimant's ability to manipulate was negatively impacted by adipose tissue; and (6) emergency room visits between October 2005 and January 2008 indicating generally Claimant's full range of motion of his bilateral extremities with no pedal edema, cyanosis or clubbing. (R. 26, 204, 375-414). Finally, with respect to Claimant's sleep apnea, the ALJ noted Claimant's use of a C-PAP machine and nebulizer and Claimant's self-report that this treatment proved beneficial. (R. 26, 236).

In addition to the objective medical evidence, the ALJ also considered the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) as referenced above. *See* S.S.R. 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the [ALJ] must consider in assessing an individual's credibility and must be considered in the context of all the evidence."). In particular, the ALJ's decision cites the

following evidence in evaluating Claimant's credibility: (1) Claimant's daily activities, which include cooking, cleaning, vacuuming, washing dishes, sweeping, walking around the yard and some work activity subsequent to the alleged disability onset date (R. 25, 26, 200, 237); (2) complaints of lower back pain, sleepiness and frequent use of the restroom (R. 25); (3) Claimant's tendency to fall asleep when sitting; (R. 25); and (4) notations on emergency room reports that Claimant was not on any medication and/or had run out of medication, a January 2008 report wherein Claimant was advised that he would no longer receive prescriptions for pain medications for his back unless he underwent an x-ray, use of Lasix to treat edema, and use of a nebulizer and C-PAP machine. (R. 25, 26, 375, 383, 389, 391, 406, 409).

The ALJ noted further inconsistencies between Claimant's testimony and the administrative record. In particular, while Claimant testified that he did not have a GED, numerous reports in the record indicate otherwise. (R. 26, 185, 190, 203, 208, 237, 249-47). Also, while Plaintiff testified to never having a driver's licence, during a January 2005 consultative examination, Claimant reported that his driving license privileges had been withdrawn after he fell asleep at the wheel. (R. 42-43, 250).

Claimant faults the ALJ for failing to "mention the fact that [Claimant] has difficulty obtaining medical care, and certainly does not appear to give much weight to the struggle he faces." Pl.'s Mem. at 14. Accordingly, Claimant argues that "[his] case should be analyzed as demonstrating credibility in that it is clear that he does not have the resources to go to the doctor, he knows he needs to go and to take medication, but he cannot do so due to poverty." *Id.*

Frequent medical visits "generally lend support to an individual's allegations of intense and persistence symptoms." S.S.R. 96-7p, 1996 WL 374186, at *7. In contrast, however,

> [An] individual's statements may be less credible if the level or frequency of
> treatment is inconsistent with the level of complaints . . . . However, the
> adjudicator must not draw any inferences about an individual's symptoms and their
> functional effects from a failure to seek or pursue regular medical treatment
> without first considering any explanations that the individual may provide, or other
> information in the case record, that may explain infrequent or irregular medical
> visits or failure to seek medical treatment.

*Id.* The inability to afford medical treatment is a sufficient reason for infrequent medical visits.

S.S.R. 96-7p, 1996 WL 374186, at *8; *see also Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th

Cir. 1986) (holding it was improper to consider a disability claimant's failure to seek treatment in

determining whether an impairment was severe when the failure was justified by lack of funds).

Here, Claimant cites no evidence indicating his difficulty in obtaining medical assistance

or medication due to cost. Upon the Court's review of the record, it can find no evidence

substantiating Claimant's claim. In fact, with the exception of a single medical report by

Agapito Fajardo, M.D. dated 24 June 2005, wherein Dr. Fajardo noted "[w]e can send for free

medicines for him but he has got to bring his income information," the Court found no

statements suggesting Claimant's inability to afford medical care. (R. 271). Over the course of

the relevant time period, Claimant received medical treatment from Dr. Fajardo (R. 271-88),

Duplin General Hospital's emergency room physicians (R. 289-98, 375-401), Duplin Mental

Health (R. 184-95) and Kinston Head & Neck Physicians & Surgeons, P.A. (R. 196). Claimant

also received medical assistance through the North Carolina Department of Correction during his

period of incarceration. (R. 178-83, 315-19, 322). Furthermore, Claimant's medical records

reveal that during many of his medical visits, he was prescribed medication. (R. 195-96, 274,

290, 294, 376, 382, 388, 394, 400, 403, 405, 409). The overwhelming weight of the record

shows that Claimant had access to both medical treatment and medication and belies his

17

contention to the contrary. *See Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (explaining no error by ALJ in finding claimant not credible despite claim of inability to afford medical treatment where claimant was found to have access to medical attention and little difficulty in obtaining medication); *see also Wooten v. Shalala*, 998 F.2d 1012 (table), 1993 WL 269267, at *4 (4th Cir. Jul. 16, 1993) (explaining the ALJ did not penalize claimant for the alleged inability to afford medication where it was not clear from the record that claimant could not afford medical treatment).

The ALJ properly evaluated Claimant's subjective accounts of his pain with the objective medical evidence present ed and did not err in finding that Claimant's statements were not entirely credible. Moreover, his decision that Claimant should not lift more than twenty pounds occasionally, despite a state agency opinion to the contrary, reflects the weight and credibility he afforded Claimant's subjective statements about his pain. (R. 28, 241-48) The evidence provides sufficient grounds for the ALJ's conclusion that Claimant's subjective account of his limitations was inconsistent with available objective evidence. (R. 21). In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's argument as to this issue is without merit.

**III.    The ALJ's RFC is supported by substantial evidence.**

Claimant contends the ALJ's finding that Claimant is capable of light work is unsupported by the record. Pl.'s Mem. at 11. This Court disagrees.

An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by his physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1. The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

The ALJ's opinion provides a detailed review of Claimant's medical records. In addition, the RFC assessment takes account of Claimant's testimony concerning pain to the extent that this testimony proved consistent with the objective medical evidence before the ALJ. *See Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006) (noting the ALJ need not accept Claimant's subjective evidence to the extent it is inconsistent with the available evidence). Moreover, the

19

ALJ considered the opinion evidence rendered by state agency examining and non-examining consultants.

Regarding Claimant's physical limitations, the ALJ discussed a January 2005 state agency RFC report indicating Claimant had the RFC to perform medium work[11] but could not climb ramps or stairs and should avoid exposure to fumes and other environmental irritants. (R. 28, 248). The ALJ, however, found Claimant's impairments limited him to light work and no exposure to environmental irritants. (R. 28). The ALJ found further that there was no basis in the record for the climbing limitations, citing findings by Corazon Ngo, M.D., a state agency examining physician, and emergency room records, indicating Claimant had a normal gait, no motor loss of functions, no pedal edema,[12] non-tender bilateral extremities and could heel and toe walk, squat and rise and tandem walk without difficulty. (R. 28, 204, 248, 375, 381, 393, 403, 404, 413). Finally, the ALJ discussed the medical opinion of E.C. Land, M.A. that Claimant should avoid prolonged sitting and climbing ladders and afforded that opinion significant weight. (R. 29, 319).

Regarding Claimant's mental limitations, the ALJ discussed a February 2005 report wherein W. H. Perkins, Ph.D., a non-examining consultant, determined Claimant experienced mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence or pace. (R. 28, 263).

---

[11] While not discussed explicitly by the ALJ, an August 2004 state agency RFC report indicated also that Claimant was capable of performing medium work. (R. 210-17)

[12] The ALJ acknowledged that the "treatment notes from emergency room visits from October 2005 through January 2008 showed some edema in [Claimant's] bilateral lower extremities with his ankles [see e.g., (R. 387, 399)];" however, the ALJ noted that "for the most part during these visits, the [C]laimant had full range of motion of his bilateral extremities with no pedal edema, cyanosis, or clubbing." (R. 26).

While the ALJ accorded significant weight to the finding that Claimant experienced mild restriction of activities of daily living, he disagreed with Dr. Perkins' other findings. (R. 28). With respect to social functioning, the ALJ noted that Claimant, while incarcerated, was "housed with the general population without difficulty." (R. 28). The ALJ noted further the report of Elizabeth A. Kauff-Hill, M.A. wherein it was noted Claimant "would likely relate adequately to co-workers and supervisors on a superficial level and his stress tolerance also appeared adequate." (R. 29, 252). Accordingly, the ALJ found that Claimant has "mild social functioning." (R. 28). However, noting that Claimant "was in and out of prison for various offenses during a period from March 2001 through June 2006," and relying on Mr. Miller's findings that Claimant was a slow learner and had problems with reading and writing, the ALJ found Claimant exhibited "moderate concentration difficulties." (R. 28, 197-01). Given the lack of evidence contradicting the findings of Ms. Kauff-Hill and Mr. Miller, the ALJ properly relied on their opinions in determining Claimant's mental work-related capacity.

Despite the above, Claimant faults the ALJ's RFC because it "fails to consider supporting documentation for [Claimant's] report that he tried to work with VRS but they were not able to help him." Pl.'s Mem. at 10. The documentation consists of a 26 April 2005 questionnaire which appears to have been completed as part of a VRS workshop, and three Work Adjustment Staffing and Progress Reports from Omega Enterprise dated April, May and July 2005. (R. 168-75). Claimant cites the above documentation as evidence of an "endurance" problem, focusing in particular on notations that Claimant becomes visibly disturbed when problems develop but shows frustration in no other way (R. 172), sleeps during lunch and breaks and works slower in the afternoon than morning (R. 174). Pl.'s Mem. at 10. Claimant suggests these findings are

indicative of limitations imposed on Claimant as a result of his breathing problems. *See id.* (explaining the April 2005 report "is well after the ALJ notes (sic) that Dr. Ngo reported that [Claimant] used a CPAP machine . . . and that with nebulizers (sic) it had helped him with this breathing problems").

The regulations require the ALJ to consider all evidence in the record when making a disability determination. *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). However, the ALJ is not required to discuss all evidence in the record. *See e.g., Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (ALJ need not discuss every piece of evidence in making credibility determination); *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) (noting "a written evaluation of every piece of testimony and submitted evidence is not required"). Rather, the ALJ must "provide [this Court] with sufficient reasoning for determining that the proper legal analysis has been conducted." *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *see also Coffman*, 829 F.2d at 517.

Here, the ALJ's summary of Claimant's administrative record "enable[s] . . . [this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Dyer*, 395 F.3d at 1211. While the ALJ did not discuss the above VRS records, the ALJ noted that Claimant continued to work subsequent to his alleged disability onset date - evidence that the ALJ was aware of Claimant's participation in VRS-related programs. (R. 23). Moreover, the VRS records, when read in totality, can be fairly interpreted as supportive of the ALJ's RFC finding. For example, the records indicate that Claimant "accepts redirection appropriately and uses it to

improve work performance," "needs occasional supervision and is able to work through on a task," "continues to learn new assignments quickly and improves performance when directed," and "has increased his ability to remain more alert and conscientious while performing various tasks." (R. 168-70). Claimant bears the burden of both production and proof during the first four steps of the sequential evaluation process. *See Pass*, 65 F.3d at 1203. This burden includes the responsibility of "providing the evidence [that the ALJ] will use to make a finding about [a claimant's] residual functional capacity." 20 C.F.R. § 404.1545(a)(3); *see also* 20 C.F.R. § 1512(c) ("You must provide evidence...showing how your impairment(s) affects your functioning during the time you say that you are disabled."). Here, Claimant does not cite objective evidence supporting his testimony that he lacks the stamina for an eight-hour workday.

The ALJ thoroughly discussed the relevant medical records, the findings of the state agency consultants and Claimant's testimony. The Court finds that substantial evidence supports the RFC assessment made by the ALJ and that the correct legal standards were applied. Accordingly, the Court rejects this assignment of error.

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except

upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 21st day of October, 2009.

Robert B. Jones, Jr.
United States Magistrate Judge