IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:08-CV-218-FL

| | | |
|---|---|---|
| JULIUS DIXON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (DE ## 17, 23). Pursuant to 28 U.S.C. § 636(b)(1), United States Magistrate Robert B. Jones, Jr. entered a memorandum and recommendation ("M&R") wherein he recommended that the court deny plaintiff's motion, grant defendant's motion, and uphold the Commissioner's final decision (DE # 25). Plaintiff timely filed an objection to the M&R (DE # 27), and defendant timely responded (DE # 28). In this posture, the matter is ripe for ruling. For the reasons that follow, the court declines to adopt in full the magistrate judge's findings and recommendations, sustains plaintiff's objections to the M&R, overturns the Commissioner's final decision, and remands for further administrative proceedings.

## STATEMENT OF THE CASE

Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income on March 16, 2004, alleging disability beginning September 30, 2000. (R. at 126-28, 415-19.) Plaintiff's claims were denied initially and upon reconsideration. (R. at 72-73, 89-92, 95, 421-28.) On October 31,

2005, plaintiff appeared before an administrative law judge ("ALJ"). At this hearing, plaintiff was represented by counsel and a vocational expert testified. (R. at 56-71.) On August 1, 2006, the ALJ issued a decision denying plaintiff's application. (R. at 74-81, 430-37.)

On June 29, 2007, the Appeals Council vacated the ALJ's decision and remanded the claim for further administrative proceedings. (R. at 86-88.) On February 18, 2008, plaintiff appeared before the ALJ a second time. Once again, plaintiff was represented by counsel and a vocational expert testified. (R. at 35-55.) On May 9, 2008, the ALJ again denied plaintiff's application. (R. at 14-31). On October 24, 2008, the Appeals Council denied plaintiff's request for review, making the ALJ's second decision the final decision of the Commissioner. (R. at 7-9.)

On December 22, 2008, plaintiff filed complaint with this court seeking review of the ALJ's decision and asking leave to proceed *in forma pauperis*. On December 23, 2008, the court granted plaintiff's *in forma pauperis* request. Defendant thereafter answered on March 3, 2009. Plaintiff moved for judgment on the pleadings on April 30, 2009, and defendant followed suit on August 28, 2009. The matter was referred to the magistrate judge, who recommended on October 21, 2009 that the court uphold the Commissioner's decision. Plaintiff timely objected on November 6, 2009, and defendant responded on November 10, 2009.

## DISCUSSION

I. Standard of Review

The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the Commissioner's denial of benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard."

2

Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds) (citing 42 U.S.C. §§ 405(g), 1383(c)(3); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

To assist it in making such a determination, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition" of a variety of motions, including motions for judgment on the pleadings. 28 U.S.C. § 636(b)(1)(B). In addressing plaintiff's objection to the M&R, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.; see Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

II. Analysis

Plaintiff's primary argument is that he is disabled under Listing 12.05 (mental retardation) and that substantial evidence does not support a contrary conclusion. Because the court agrees that the ALJ failed to properly evaluate plaintiff under Listing 12.05, it need not address plaintiff's challenges to the ALJ's credibility determination and residual functional capacity assessment.

Listing 12.05 establishes a two-part inquiry to determine whether an individual meets the criteria for mental retardation. Norris v. Astrue, No. 7:07-cv-184-FL, 2008 WL 4911794 (E.D.N.C. Nov. 14,

3

2008). The individual must first satisfy the diagnostic description of mental retardation: "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., . . . before age 22." Id. at *2 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05). Then, plaintiff must meet the required severity level by satisfying one of four categories labeled (A) through (D). Id. at *3. As relevant here, category (B) is met by "[a] valid verbal, performance, or full scale IQ or 59 or less" and category (C) is met by (1) "[a] valid verbal, performance, or full scale IQ of 60 through 70" and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(B), (C).

The ALJ first found that plaintiff did not meet the diagnostic description of mental retardation because he had no "deficits in adaptive functioning and . . . no objective evidence to support a finding that [plaintiff's] mental condition manifested prior to attainment of age 22." (R. at 24.) The ALJ noted plaintiff's ability to cook, clean, use a pay telephone, care for himself, make independent decisions on his own behalf, and work as an unskilled laborer. He claimed plaintiff's school records showed that he did well or very well in subjects that he liked, and explained his repeating of the ninth grade as due to excess absences. He also noted plaintiff's ability to recount his medical history, follow instructions, and participate in medical evaluations.[1]

The ALJ's analysis was flawed in many respects. As the magistrate judge noted, plaintiff's

---

[1] Listing 12.05 does not define "adaptive functioning," but its definition is "consistent with, if not identical to, the definitions . . . used by the leading professional organizations." Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20,018-01, 20,022 (Apr. 24, 2002). The fourth edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") defines adaptive functioning as "how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of [similar individuals]" as measured in a variety of skill areas, including communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health and safety. DSM-IV 39-40 (1994).

enrollment in special education classes, his poor performance in school, his inability to complete the ninth grade, and his lackluster performance on achievement testing is evidence demonstrating deficits in adaptive functioning prior to age 22. (M&R 11-12.) The magistrate judge also rejected the ALJ's unsupported conclusion that plaintiff did "well" in school in subjects that he liked. (M&R 11 n.8.) The court agrees with these uncontested portions of the M&R. The court further finds the ALJ's determination that plaintiff's need to repeat the ninth grade was due to too many absences also unsupported by evidence. The ALJ misstated the number of times plaintiff repeated the ninth grade, then failed to consider that plaintiff never obtained a single credit in three years, regardless of whether he missed seventy-seven (77), sixty-nine (69), or twenty-nine (29) days. (R. at 162.) Finally, the ALJ's statement that plaintiff "did not have any findings of deficits in adaptive functioning" (R. at 23-24 (emphasis added)) is inconsistent with his own findings, supported by the opinion of Dr. W. H. Perkins, that plaintiff had mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration.

The ALJ next determined plaintiff was unable to meet the severity levels described by category (B), requiring a valid verbal, performance, or full scale IQ of 59 or less, or category (C), requiring a valid verbal, performance, or full scale IQ of 60 to 70 and an additional significant work-related limitation.[2] The ALJ found that the verbal IQ score of 60 and the full scale IQ score of 50 obtained during consultation with Jerry Miller, M.A., were not valid indicators of plaintiff's true intelligence. The ALJ based his rejection of

---

[2] Though plaintiff claims to satisfy category (C), the court liberally construes plaintiff's objections as invoking category (B) as well. Doing so does not affect the court's analysis because, as discussed in the M&R, the ALJ's finding that plaintiff did not meet the additional requirements for category (C) was in error. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A (equating a "work-related limitation of function" with a "severe impairment" under step two of the analysis); Flowers v. U.S. Dep't of Health & Human Servs., 904 F.2d 211, 214 (4th Cir. 1990) (holding inability to return to past relevant work satisfies "work-related limitation of function" requirement).
5

the scores on Mr. Miller's caveat that they "may be viewed with caution" because plaintiff's vocabulary appeared to be superior to what was reflected in the test. (R. at 199.) The ALJ also noted the opinion of Dr. Carol M. Gibbs that plaintiff "seemed to be in the low average range of intellectual functioning...." (R. at 207.)

The conclusion that plaintiff does not meet category (B) or (C) is problematic in that the ALJ only rejected plaintiff's verbal and full scale IQ scores. He did not explicitly reject the performance IQ score of 49, perhaps because he believed Mr. Miller's caution about plaintiff's seemingly superior vocabulary called into question only the verbal and full scale scores. Moreover, the performance IQ score was lower than the verbal and full scale scores, and "where verbal, performance, and full scale IQs are provided . . ., [the ALJ] use[s] the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(D)(6)(c). Because the performance IQ score of 49 was the lowest score, if the ALJ believes that score to be valid, he is obligated to find that plaintiff meets category (B), which states that a "[a] valid verbal, performance, or full scale IQ or 59 or less" is sufficiently severe to meet Listing 12.05. Id. § 12.05(B) (emphasis added).

Because the ALJ erred in both parts of the two-part analysis required under Listing 12.05, the court is unable to conclude that substantial evidence supports his decision that plaintiff does not meet that listing. On remand, the ALJ must properly take into account evidence suggesting plaintiff meets the diagnostic description of mental retardation. He will also need to explain the rationale, if any, behind his failure to reject the performance IQ score of 49. Finally, plaintiff should be given an opportunity to submit his school records to Mr. Miller in order to determine whether they are consistent with these scores, which

will provide both the ALJ and this court with additional information helpful on further review.[3] Alternatively, plaintiff may wish to retake the test.

## CONCLUSION

For the foregoing reasons, upon *de novo* review of those portions of the magistrate judge's M&R to which specific objections have been filed, and upon a considered review of the uncontested proposed findings and conclusions, the court adopts in part and rejects in part the magistrate judge's recommendations, sustains plaintiff's objections, and overturns the Commissioner's decision. Accordingly, plaintiff's motion for judgment on the pleadings (DE # 17) is GRANTED, and defendant's motion for judgment on the pleadings (DE # 23) is DENIED. The case is REMANDED to the Commissioner for further proceedings consistent with this order.

SO ORDERED, this the 4th day of December, 2009.

LOUISE W. FLANAGAN
Chief United States District Judge

---

[3] Contrary to plaintiff's assertion, an ALJ may declare IQ scores invalid without an explicit finding to that effect by the examiner. See, e.g., Edge v. Astrue, 627 F. Supp. 2d 609, 612-14 (E.D.N.C. 2008) (finding substantial evidence supported a finding that test was invalid where one examiner "suggested that plaintiff's I.Q. scores were lower than his actual ability" due to vision problems and another "expressed doubts about the validity of the test" based on motivation and effort). It is a close question whether substantial evidence supports the ALJ's decision in the instant case, however, because Mr. Miller stated that "[a] review of background data . . . as to educational placement would be useful" in verifying the scores (R. at 200). As the court has already noted, plaintiff's academic history could indicate deficits in adaptive functioning.

7